1  MICHELE BECKWITH
   Acting United States Attorney
2  ELLIOT C. WONG
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8                IN THE UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

   UNITED STATES OF AMERICA,           CASE NO.    2:25-cr-0140 DAD
11
                         Plaintiff,     18 U.S.C. § 1344(2) – Bank Fraud (12
12                                      counts); 18 U.S.C. § 1029(a)(2) & (c)(1)(B) –
            v.                          Access Device Fraud; 18 U.S.C. § 1028A –
13                                      Aggravated Identity Theft (4 counts); 18
   AHMAD NASSAR and                     U.S.C. §§ 982(a)(1), 982(a)(2)(A),
14  AYMAN ALAARAJ,                      982(a)(2)(B), and 1029(c)(1)(C) – Criminal
                                        Forfeiture
15
                         Defendants.
16

17

18                      I N D I C T M E N T

19  COUNTS ONE THROUGH TWELVE: [18 U.S.C. § 1344(2) – Bank Fraud]

20       The Grand Jury charges: T H A T

21                      AHMAD NASSAR, and

22                      AYMAN ALAARAJ,

23  defendants herein, as follows:

24            I.      INTRODUCTION

25       At all relevant times,

26       1.      Defendant AHMAD NASSAR was a resident of Elk Grove, California.  In 2019,

27  NASSAR was convicted in the Eastern District of California of violations of 18 U.S.C. § 1029(a)(3) –

28  unlawfully possessing 15 or more access devices; 18 U.S.C. § 1028A – aggravated ID theft; and 18

INDICTMENT                          1

FILED

**Jun 05, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

1  U.S.C. § 922(g)(1) – felon in possession of a firearm in case number 2:17-CR-00104-KJM.

2      2.      Defendant AYMAN ALAARAJ was a resident of Sacramento, California. ALAARAJ

3  was NASSAR's brother-in-law. He owned and operated two business: Balance Bookkeeping, Tax and

4  Notary Services (hereinafter, "Balance Bookkeeping"), a sole proprietorship, and Atheer Investments,

5  LLC.

6      3.      Person 1 and Person 2 were brothers. Persons 1 and 2 hired ALAARAJ and his business,

7  Balance Bookkeeping, to prepare their annual tax filings for multiple tax years. Persons 1 and 2 each

8  maintained accounts at Bank 1 and Bank 2. Person 1 lived abroad and had granted power of attorney to

9  Person 2 to manage his personal finances in his absence. By virtue of this power of attorney, Person 2

10  maintained access to Person 1's bank accounts at both Bank 1 and Bank 2. Person 2 had not been able

11  to manage or monitor Person 1's finances since at least May 2023, however, because Person 2 became

12  ill and then died in November 2023.

13      4.      Person 3 was a single mother who sought financial assistance from NASSAR.

14      5.      Person 4 was the cousin of NASSAR's spouse and sought financial assistance from

15  NASSAR.

16      6.      Person 5 was an inmate in the custody of the Federal Bureau of Prisons.

17      7.      The banks referenced herein, including Bank 1, Bank 2, and Bank 3 were financial

18  institutions as defined in 18 U.S.C. § 20, in that they were members of the Federal Deposit Insurance

19  Corporation ("FDIC"), their deposits were insured by the FDIC, and they were conducting banking

20  business in interstate commerce.

21              II.      SCHEME TO DEFRAUD

22      8.      Beginning no later than about May 2023, and continuing until at least about December

23  2023, in the State and Eastern District of California, and elsewhere, NASSAR and ALAARAJ

24  knowingly devised, intended to devise, and participated in, with the intent to defraud, a scheme to obtain

25  the money, funds, credits, assets, securities, and other property owned by and under the control of Bank

26  1 and Bank 2 by making material false and fraudulent pretenses, representations, and promises.

27      9.      The purpose of the scheme and artifice to defraud was to execute a "bank account

28  takeover" scheme. In this scheme, NASSAR and ALAARAJ obtained, converted, and spent money

INDICTMENT                                2

1    under the custody and control of Bank 1 and Bank 2, which belonged to Person 1 and Person 2.

2    NASSAR and ALAARAJ did so without their authorization and knowledge, and by giving the

3    appearance to the banks that it was Persons 1 and 2 themselves directing the flow of funds out of the

4    bank accounts, when in fact it was NASSAR, assisted on occasion by ALAARAJ.  As part of the

5    scheme, NASSAR and ALAARAJ took steps to conceal the ultimate recipients of the funds and purpose

6    of payments from the accounts in order to evade detection and to allow the scheme to continue.

7                              III.    MANNER AND MEANS

8              In furtherance of the fraud, NASSAR and ALAARAJ employed the following manner and

9    means, among others:

10             10.    In or about May 2023, NASSAR gained control over Person 1 and Person 2's bank

11    accounts at both Bank 1 and Bank 2.  Some of the steps he took to accomplish this bank account

12    takeover included, for example: obtaining Person 1 and Person 2's personal and financial information

13    and taking control of a phone number associated with Person 2 by porting the number to NASSAR's

14    iPhone.  NASSAR then gained online access to Person 1 and Person 2's bank accounts and used the

15    ported phone number to defeat Bank 1 and Bank 2's dual-factor authentication security measures.

16             11.    Once NASSAR gained access to, and control over, Person 1 and Person 2's accounts, he

17    often obfuscated the destination of funds he stole by causing the creation of several pass-through

18    accounts in Person 1 and Person 2's names, as well as in Person 4's name, at Bank 1, Bank 2, and Bank

19    3.  NASSAR, assisted on occasion by ALARAAJ, then funneled money through those pass-through

20    accounts and further disbursed those stolen funds.

21             12.    NASSAR obtained, converted, and spent money from Person 1 and Person 2's accounts

22    at Bank 1 and Bank 2 in the following ways, among others: cash withdrawals, personal checks, Western

23    Union transactions, Zelle transactions, payments to credit cards, online gambling, and purchase of a

24    2015 Mercedes C63 AMG S.  NASSAR also opened new lines of credit in Person 1 and Person 2's

25    names at Banks 1 and 2 and ran up unpaid balances on those accounts.

26             13.    NASSAR also concealed and disguised the stolen funds obtained from Person 1 and

27    Person 2 by conducting financial transactions in others' names, including in the names of Person 3,

28    Person 4, and Person 5, among others.

INDICTMENT                                      3

14.    NASSAR and ALAARAJ also concealed and disguised the stolen funds from Person 1 and Person 2 by conducting financial transactions through ALAARAJ's businesses, Balance Bookkeeping and Atheer Investments.

a.  As an example, NASSAR and ALAARAJ sent transactions via the payment platform Square that transferred over approximately $98,000 in stolen funds to ALAARAJ's account, which was associated with his business, Balance Bookkeeping.  Many of these transactions also included an added "tip."  These tips averaged about $700 per transaction and, in total, amounted to more than about $11,000.  On or about September 13, 2023, Square reached out to ALAARAJ about these transactions and the added tips.  In response to Square's inquiry, ALAARAJ explained that it was corporate tax filing season, and he had a new customer who was expected to pay about $23,000.  ALAARAJ claimed the payment was initially declined for the total amount, so the payments had to be split.  He also explained that the "tips" were because: "They tipped me every time i finished The tax filing for them successfully. I like it when they tipped me. I never thought it's a problem to get tipped."  ALAARAJ then sent Square a photo of a non-numbered invoice, dated September 14, 2023.  This invoice purported to document a payment of about $23,220 from Person 1 and Person 4 to ALAARAJ's business for tax preparation services.  This invoice, however, was fraudulent.  In reality, Person 1 and Person 4 are unrelated and do not jointly file taxes.  The same day ALAARAJ dated and sent this invoice to Square, he communicated with Nassar via text messages.  In those communications, ALAARAJ asked NASSAR how to spell Person 4's name.

b.  As an additional example, ALAARAJ also operated Atheer Investments, through which ALAARAJ sold appliances.  NASSAR and ALAARAJ conducted transactions via the payment platform Square that transferred over about $10,000 in stolen funds to ALAARAJ's account, which was associated with his business, Atheer Investments.  These stolen funds originated from an account in Person 1's name and were transferred to ALAARAJ's account through a pass-through account in Person 4's name.  ALAARAJ claimed in an interview with law enforcement that these transfers were related to

INDICTMENT

4

appliance purchases that Person 4 made from ALAARAJ and Atheer Investments. This claim was false in that the transfers were not for appliance purchases made by Person 4.

15.    In total, the bank account takeover scheme diverted and stole over approximately $794,000 in funds from the bank accounts of Persons 1 and 2, to the defendants, with over approximately $107,000 of these funds deposited into ALAARAJ's business accounts for Balance Bookkeeping and Atheer Investments.

IV.    EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

16.    On or about the dates set forth below, in the State and Eastern District of California, and elsewhere, NASSAR and ALAARAJ knowingly executed and attempted to execute the scheme and artifice to obtain monies, funds, credits, assets, securities, and other property under the custody and control of the financial institutions specified below by means of false and fraudulent pretenses, representations, and promises, as specified below:

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

| Count | Defendant(s) | On or About | Description |
|-------|--------------|-------------|-------------|
| 1 | NASSAR | June 10, 2023 | A payment of approximately $2,999 to NASSAR via Western Union, which drew on funds from an account in Person 2's name at Bank 2. |
| 2 | NASSAR | June 13, 2023 | A payment of approximately $6,500, via check dated June 13, 2023, payable to Person 3, which drew on funds from an account in Person 2's name at Bank 2. |
| 3 | NASSAR | June 18, 2023 | A payment of approximately $9,600, via check dated June 18, 2023, payable to NASSAR, which drew on funds from an account in Person 2's name at Bank 2. |
| 4 | NASSAR | July 13, 2023 | A payment of approximately $7,050, via check dated Jun. 14, 2023, payable to Person 4, which drew on funds from an account in Person 1's name at Bank 2. |
| 5 | NASSAR | Aug. 17, 2023 | Two payments, totaling approximately $49,057.45, via wire to Carvana.com for the purchase of a 2015 Mercedes C63 AMG S, which drew on funds from an account in Person 1's name at Bank 1. |
| 6 | NASSAR ALAARAJ | Sept. 10, 2023 | Four payments, totaling approximately $23,200 (including attempted tips totaling $2,100), to ALAARAJ's business account for Balance Bookkeeping via the payment platform Square, which drew on funds from two accounts in Person 1's name at Bank 2. |
| 7 | NASSAR | Sept. 13, 2023 | A payment of approximately $3,151.99 to Person 5 via Western Union, which drew on funds from an account in Person 1's name at Bank 2. |
| 8 | NASSAR ALAARAJ | Sept. 23, 2023 | A payment of approximately $5,000 to ALAARAJ's business account for Balance Bookkeeping via the payment platform Square, which drew on stolen funds from an account in Person 1's name at Bank 2. |
| 9 | NASSAR | Sept. 24, 2023 | A cash withdrawal of approximately $2,000 at an ATM located in Elk Grove, California, which drew on funds from an account in Person 1's name at Bank 2. |
| 10 | NASSAR | Oct. 6, 2023 | A cash withdrawal of approximately $2,000 at an ATM located in Elk Grove, California, which drew on funds from an account in Person 1's name at Bank 2. |
| 11 | NASSAR ALAARAJ | Nov. 10, 2023 | A payment of approximately $1,313 to ALAARAJ's business account for Atheer Investments via the payment platform Square, which drew on stolen funds from a pass-through account in Person 4's name at Bank 3. |
| 12 | NASSAR ALAARAJ | Dec. 4, 2023 | A payment of approximately $2,000 to ALAARAJ's business account for Atheer Investments via the payment platform Square, which drew on stolen funds from a pass-through account in Person 4's name at Bank 3. |

All in violation of Title 18, United States Code, Section 1344(2).

INDICTMENT

1  COUNT THIRTEEN: [18 U.S.C. § 1029(a)(2) & (c)(1)(B) – Access Device Fraud]

2        The Grand Jury further charges: T H A T

3                    AHMAD NASSAR,

4  defendant herein, beginning no later than about May 2023, and continuing until at least about December

5  2023, in the State and Eastern District of California, and elsewhere, did knowingly and with intent to

6  defraud, traffic in, and use one or more unauthorized access devices as defined in 18 U.S.C. § 1029(e)(1)

7  and (3), to wit: telecommunications services associated with telephone number (xxx) xxx-1641, a phone

8  number associated with Person 2, and by such conduct obtained anything of value aggregating $1,000 or

9  more during a one-year period, affecting interstate and foreign commerce, and did so after having been

10 convicted of another offense under this section in the Eastern District of California, case number 2:17-

11 CR-00104-KJM, all in violation of Title 18, United States Code, Section 1029(a)(2) & (c)(1)(B).

12 COUNT FOURTEEN: [18 U.S.C. § 1028A – Aggravated Identity Theft]

13       The Grand Jury further charges: T H A T

14                   AHMAD NASSAR,

15 defendant herein, on or about June 13, 2023, in the State and Eastern District of California, and

16 elsewhere, did knowingly transfer, possess, and use, without lawful authority, a means of identification

17 of another, to wit: the name and signature of Person 2, during and in relation to felony violations of Title

18 18, United States Code, Section 1344(2) – Bank Fraud, and Section 1029(a)(2) – Access Device Fraud,

19 knowing that the means of identification belonged to another actual person, in violation of Title 18,

20 United States Code, Section 1028A.

21 COUNT FIFTEEN: [18 U.S.C. § 1028A – Aggravated Identity Theft]

22       The Grand Jury further charges: T H A T

23                   AHMAD NASSAR,

24 defendant herein, on or about July 13, 2023, in the State and Eastern District of California, and

25 elsewhere, did knowingly transfer, possess, and use, without lawful authority, a means of identification

26 of another, to wit: the name and signature of Person 1, during and in relation to felony violations of Title

27 18, United States Code, Section 1344(2) – Bank Fraud, and Section 1029(a)(2) – Access Device Fraud,

28 knowing that the means of identification belonged to another actual person, in violation of Title 18,

INDICTMENT

7

1 United States Code, Section 1028A.

2 COUNT SIXTEEN: [18 U.S.C. § 1028A – Aggravated Identity Theft]

3      The Grand Jury further charges: T H A T

4                    AHMAD NASSAR,

5 defendant herein, on or about September 13, 2023, in the State and Eastern District of California, and

6 elsewhere, did knowingly transfer, possess, and use, without lawful authority, a means of identification

7 of another, to wit: the name of Person 5, during and in relation to felony violations of Title 18, United

8 States Code, Section 1344(2) – Bank Fraud, and Section 1029(a)(2) -- Access Device Fraud, knowing

9 that the means of identification belonged to another actual person, in violation of Title 18, United States

10 Code, Section 1028A.

11 COUNT SEVENTEEN: [18 U.S.C. § 1028A – Aggravated Identity Theft]

12      The Grand Jury further charges: T H A T

13                  AYMAN ALAARAJ,

14 defendant herein, on or about September 14, 2023, in the State and Eastern District of California, and

15 elsewhere, did knowingly transfer, possess, and use, without lawful authority, a means of identification

16 of another, to wit: the name of Person 1, during and in relation to felony violations of Title 18, United

17 States Code, Section 1344(2) -- Bank Fraud, knowing that the means of identification belonged to

18 another actual person, in violation of Title 18, United States Code, Section 1028A.

19 FORFEITURE ALLEGATION: [18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 982(a)(2)(B), and 1029(c)(1)(C)

20                         – Criminal Forfeiture]

21     1.     Upon conviction of one or more of offenses alleged in Counts One through Twelve of

22 this Indictment, defendants AHMAD NASSAR and AYMAN ALAARAJ shall forfeit to the United

23 States, pursuant to 18 U.S.C. §§ 982(a)(2)(A) or 982(a)(2)(B), any property constituting or derived from

24 proceeds obtained directly or indirectly, as a result of said violations, including but not limited to the

25 following:

26         a.   2015 Mercedes C63 AMG S, VIN: 55SWF8HB7FU081410, and

27         b.   A sum of money equal to the amount of proceeds obtained directly or indirectly, as a
             result of such offenses, for which defendant is convicted.

28

INDICTMENT                   8

2.    Upon conviction of the offense alleged in Count Thirteen of this Indictment, defendant AHMAD NASSAR shall forfeit to the United States, pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the offense.

3.    3. If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Thirteen of this Indictment, for which the defendants are convicted:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §§ 982(b)(1) and 1029(c)(1)(C)(2), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendants, up to the value of the property subject to forfeiture.

A TRUE BILL.

/s/ Signature on file w/AUSA

_____
FOREPERSON

_____
MICHELE BECKWITH
Acting United States Attorney

No. _ _ _ _ _ _ _ _ _

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

AHMAD NASSAR and
AYMAN ALAARAJ

---

## I N D I C T M E N T

**VIOLATION(S):**   18 U.S.C. § 1344(2) – Bank Fraud (9 counts);
18 U.S.C. § 1029(a)(2) & (c)(1)(B) – Access Device Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft (4 counts);
18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 982(a)(2)(B), and 1029(c)(1)(C) – Criminal Forfeiture

*A true bill,*               **/s/ Signature on file w/AUSA**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ 5th _ *day*

*of* __June_ _ _ _ _ _ _ _ _ _ *, A.D. 20* 25 _ _ _

/s/ C. Nair
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk.*

---

*Bail, $* No process necessary for Ahmad Nassar.
No bail bench warrant for Ayman Alaaraj.
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

---

GPO 863 525

**United States v. Ahmad Nassar and Ayman Alaaraj**
**Penalties for Indictment**

## FOR DEFENDANT AHMAD NASSAR

### COUNTS 1-12:

VIOLATION:        18 U.S.C. § 1344(2) – Bank Fraud

PENALTIES:        A maximum of up to 30 years' imprisonment;
                  Fine of up to $1,000,000; or both fine and imprisonment
                  Supervised release of up to five years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 13:

VIOLATION:        18 U.S.C. § 1029(a)(2) & (c)(1)(B) – Access Device Fraud

PENALTIES:        A maximum of up to 20 years' imprisonment;
                  Fine of up to $250 ,000; or both fine and imprisonment
                  Supervised release of up to three years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNTS 14-17:

VIOLATION:        18 U.S.C. § 1028A – Aggravated Identity Theft

PENALTIES:        Mandatory two years' imprisonment, to be imposed consecutively;
                  Fine of up to $250,000; or twice the gross gain or gross loss, whichever is
                  greater or both fine and imprisonment
                  Supervised release of up to one year

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### FORFEITURE ALLEGATION:

VIOLATION:        18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 982(a)(2)(B), and 1029(c)(1)(C) -
                  Criminal Forfeiture

PENALTIES:        As stated in the charging document

**United States v. Ahmad Nassar and Ayman Alaaraj**
**Penalties for Indictment**

**FOR DEFENDANT AYMAN ALAARAJ**

**COUNTS 6, 8, 11, and 12:**

| | |
|---|---|
| VIOLATION: | 18 U.S.C. § 1344(2) – Bank Fraud |
| PENALTIES: | A maximum of up to 30 years' imprisonment;<br>Fine of up to $1,000,000; or both fine and imprisonment<br>Supervised release of up to five years |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 17:**

| | |
|---|---|
| VIOLATION: | 18 U.S.C. § 1028A – Aggravated Identity Theft |
| PENALTIES: | Mandatory two years' imprisonment, to be imposed consecutively;<br>Fine of up to $250,000; or twice the gross gain or gross loss, whichever is greater or both fine and imprisonment<br>Supervised release of up to one year |

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:**

| | |
|---|---|
| VIOLATION: | 18 U.S.C. §§ 982(a)(1), 982(a)(2)(A), 982(a)(2)(B), and 1029(c)(1)(C) - Criminal Forfeiture |